UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDERICK RYDELL CARNEY,<br>　　　　　Plaintiff,<br>　　v.<br>L. CUEVAS, et al.,<br>　　　　　Defendants. | Case No. 18-cv-03644-WHO (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Dkt. No. 17 |

## INTRODUCTION

Plaintiff Frederick Rydell Carney alleges in this 42 U.S.C. § 1983 suit that his jailors at Salinas Valley State Prison violated his equal protection and First Amendment rights from January 2015 to October 2016 by refusing to release him to go to work. Defendants move for summary judgment and have presented supporting evidence. Carney has not filed an opposition, though the opposition filing deadline was extended by the Court on its own motion. (Dkt. No. 19.)

Carney has not shown a genuine dispute of material fact that his equal protection or First Amendment rights were violated. His allegation that defendants allowed Hispanic but not African-American inmates to be released for work is speculative and not supported by any evidence. His allegation that defendants acted in retaliation for exercising his First Amendment rights to file grievances is contradicted by the fact that his grievances were filed after the alleged retaliation started. His conclusory allegations that defendants' actions chilled his First Amendment rights are insufficient to show a genuine dispute of material fact.

Defendants have presented undisputed evidence that Carney was able to work during the months in question, and that he was retained in his cell at times for security reasons. Because the undisputed material facts show nothing indicating that Carney's rights were violated, defendants' motion for summary judgment is GRANTED.

## BACKGROUND

The following factual allegations are undisputed unless specifically noted otherwise. Carney, who is African-American, alleges that between January 2015 and October 2016 at Salinas Valley State Prison, three Hispanic prison guards (defendants Cuevas, Marquez, and Hernandez) prevented him from leaving his cell to attend to his job as a porter. (First Am. Compl., Dkt. No. 8 at 1-3.)[1] He alleges during this time period defendants allowed Hispanic prisoners to leave their cells, thereby violating his equal protection rights. (*Id.*) He further alleges that defendants' actions were taken in retaliation for filing grievances against defendants. (*Id.*)

Carney's allegations are unsupported; he has not provided any proof of discriminatory intent, only speculation. The grievances that allegedly caused the retaliation were challenges to his confinement; not surprisingly, they were filed after the allegedly impermissible confinement began in January 2015. He filed grievances against Cuevas on August 25, 2015; November 3, 2015; May 18, 2016; and June 19, 2016. (First. Am. Compl., Dkt. No. 8 at 8, 9, 11.) He filed a grievance against Marquez on May 4, 2016. (*Id.* at 10.) He filed a grievance (along with three other prisoners) against Cuevas, Marquez, and Hernandez on August 16, 2016. (*Id.* at 22.) He filed another grievance against defendants on October 10, 2016. (*Id.* at 26.)

Defendants dispute Carney's allegations and make four salient arguments. First, "[t]he evidence demonstrates that throughout the period in question, [p]laintiff typically worked over 130 hours per month, and was frequently written up for distributing contraband to other inmates during work hours." (Mot. for Summ. J. (MSJ), Dkt. No. 17

---

[1] All citations to filings are to the page numbers generated by Court's electronic filing system.

2

at 6.) Second, for several months during the time period, plaintiff worked a "reduced number of hours" because the prison was in lockdown at times and Carney was kept in his cell for security reasons. (*Id.*) Third, Carney failed to exhaust his administrative remedies against defendant Hernandez. (*Id.*) Fourth, Carney has offered speculation, rather than evidence, that any invidious discrimination occurred. In sum, defendants contend Carney has not shown a genuine dispute of material fact as to his claims.

i. **Work Hours**

Carney's work hours for the relevant time period were:

| | |
|---|---|
| January 2015: | 133 hours |
| February 2015: | 133 hours |
| March 2015: | 147 hours |
| April 2015: | 147 hours |
| May 2015: | 139.75 hours |
| June 2015: | 148.25 hours |
| July 2015: | 140.25 hours |
| August 2015: | 77 hours |
| September 2015: | 84 hours |
| October 2015: | 125.75 hours |
| November 2015: | 35 hours |
| December 2015: | 161 hours |
| January 2016: | 154 hours |
| February 2016: | 140 hours |
| March 2016: | 119 hours |
| April 2016: | 96.50 hours |
| May 2016: | 147 hours |
| June 2016: | 154 hours |
| July 2016: | 151 hours |
| August 2016: | 140 hours |

1        September 2016:     147 hours

2   (MSJ, Cuevas Decl., Dkt. No. 17-4 at 2-3.)  He worked reduced hours in August 2015,

3   September 2015, and April 2016 because the prison was in lockdown during those months.

4   (MSJ, Dkt. No. 17 at 13.)  During a lockdown, only critical care workers are allowed to

5   work. (*Id.*)  The porters, including Carney, are not critical care workers. (*Id.*)

6        The hours for November 2015 were "reduced because the officers working in the

7   building failed to enter the inmate workers' hours into the computer system." (*Id.*)  There

8   is no evidence, defendants contend, that these inmates "were being retaliated against or

9   were subjected to discrimination during that month or any other time period." (*Id.*)

### ii.  Contraband Incidents

In 2015 and 2016, Carney was found guilty of passing contraband and failing to attend to his porter's duties:

**April 7, 2015**: Carney was seen passing unknown contraband under a cell door while he was supposed to be performing his work duties.  He was found guilty of failing to meet program expectations and lost 30 days of privileges (MSJ, Dkt. No. 17 at 9);

**May 5, 2015**: Carney, on duty as a porter, was seen leaving his assigned area and going into the recreational yard.  The prison guard, Puente, had Carney returned to his properly assigned area, whereupon Carney said, "Why can't I get yard?"  Puente told him he had to follow direct orders and to attend to his porter's duties.  Carney shouted, "I don't have to fucking listen to you.  Fuck my job!"  He was found guilty of "a recurring failure to meet program expectations" and lost 30 days of privileges (*id.* at 9);

**June 16, 2015**: Defendant Cuevas released Carney from his cell for work.  As he walked out of the cell, Carney said, "Cuevas, what is your fucking problem?  Why didn't you let me out earlier?"  After Cuevas explained that he had been busy attending to other duties, Carney said, "Fuck you, you did that shit on purpose, you're an idiot."  He was found guilty of "willfully resisting, delaying, [and] obstructing a peace officer," and lost 60 days of privileges (*id.* at 9-10);

**November 14, 2015**: A prison guard, Barroso, told Carney "to get off the upper tier and stop passing unknown items to cell doors" because it was "taking [time] away from [o]fficers conducting regular duties." Carney ignored the order and kept passing items. Barroso told Carney "that as a building porter . . . there are responsibilities that must be complete and that having [Carney] run around not following orders is causing a delay in normal program activities." In his report on the incident, Barroso stated that if Carney continued to misbehave, he could be removed from his porter job assignment, (*id.* at 10);

**May 13, 2016**: When defendant Cuevas released Carney's cellmate from the cell, Carney exited too. He ignored Cuevas's order to return to the cell and walked around the tier. Cuevas watched Carney "take 6 used state razors from the recycled razors bin." He told Carney to put them back and repeated his order to return to the cell.

Carney was "unreceptive" to the orders and "instead ran to lower C section to grab a CD and then ran to upper C section." Cuevas again ordered Carney to return to his cell and warned him that noncompliance would result in a rules violation report for disobeying orders. Carney replied, "Verbal warning my asshole," and then ran up to another section of the building.

Cuevas noted that Carney takes advantage of his porter job to distribute contraband; rules violation reports and verbal warnings did not deter his behavior; and, Carney was disrespectful and confrontational when counseled or written up. Cuevas asked that Carey be assigned to a different job.

Carney was found guilty of disobeying orders and lost 30 days of privileges, (*id.* at 11);

**June 16, 2016**: Cuevas saw Carney leave his cell to walk to another and "pass unidentified contraband" underneath the cell door. He gave Carney a "verbal order to stop passing contraband and . . . to work if he [Carney] wanted to stay out." Carney, unresponsive to Cuevas's instructions, went to another cell door to pass a CD, and then to another cell to pass a book, before returning to his cell. When Cuevas told Carney that he should do his work and not pass contraband, Carney replied, "So what? Write me up!"

5

Carney was found guilty of failing to meet work expectations and lost 30 days of privileges (*id.* at 11);

**July 16, 2016**: Ortega, a prison guard, saw Carney stopping at various cell doors. He ordered Carney to stop "passing unknown items underneath the cell doors." Carney responded, "I'm a grown ass man, I do whatever the fuck I want." When Carney again passed items under cell doors, Ortega told Carney that he would get a rules violation report for disobeying an order. Carney walked toward the control booth and said, "Fuck you I don't give a fuck do whatever you want. I'm a grown ass man and I don't give a fuck about a 115," (*id.*);

**September 9, 2016**: Cuevas released Carney from his cell for work. Carney ignored Cuevas's order to close his cell door, stating that "he was a porter and . . . could leave his door open if he wanted to." Cuevas "informed Carney that his privileges as a porter was [*sic*] to work, not to leave his door open." Cuevas told Carney that "his behavior and performance was a failure to meet program/work expectations." Carney replied, "write me up." Cuevas noted that Carney "attempts to leave his door open almost on a daily basis and has received multiple verbal warnings," (*id.* at 11-12.).

### iii. Exhaustion

Defendants admit Carney administratively exhausted his claims against Cuevas and Marquez, but failed to exhaust his claims against Hernandez. He filed a grievance (along with three other prisoners) against Cuevas, Marquez, and Hernandez on August 16, 2016 (Log # SVSP-L-16-4984). (First. Am. Compl., Dkt. No. 8 at 22.) This grievance was cancelled at the second level of review because group appeals are not allowed. (*Id.* at 8 at 160.) The grievance was resubmitted with a rebuttal, and was again rejected as an improper group appeal. (*Id.* at 161.) It was resubmitted, and was again rejected for failing to follow instructions. (*Id.*) A cancelled grievance does not proceed to the final level of review, and therefore it cannot constitute proper exhaustion. The exhaustion requirement mandates "proper exhaustion" of all available administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

He filed another grievance against defendants (including Hernandez) on October 10, 2016 (Log # SVSP-L-16-05897). (*Id.* at 26.) It was screened out at the first level for failure to provide information. (*Id.* at 173.) Carney does not assert he pursued his remedies after this grievance was screened out, nor is there any documentation in his exhibits indicating that any further effort was made to exhaust.

## II.     Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). The Court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the

7

nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotations omitted).

**III.  Claims**

Defendants move for summary judgment on grounds that Carney has not shown a genuine dispute as to any material fact. They assert that the undisputed evidence shows that during the relevant time period Carney worked plenty of hours, was often disciplined for passing contraband during his work hours, failed to exhaust his administrative remedies as to Hernandez, has shown no evidence of retaliation, and offers only speculation rather than evidence that defendants failed to release him for work but did release Hispanic inmates for their work assignments. In sum, defendants contend Carney has not shown a genuine dispute as to any material fact.

Carney did not file an opposition to the motion for summary judgment, even though the Court on its own motion extended the filing deadline. (Dkt. No. 19.) That does not end the matter because a district court may not grant a motion for summary judgment solely because the opposing party has failed to file an opposition. *See Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994) (unopposed motion may be granted only after court determines that there are no material issues of fact). This is so even if the failure to oppose violates a local rule. *See Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003). The Court may, however, grant an unopposed motion for summary judgment if the movant's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact. *See United States v. Real Property at Incline Village*, 47 F.3d 1511, 1520 (9th Cir. 1995) (local rule cannot mandate automatic entry of judgment for moving party without consideration of whether motion and supporting papers satisfy Fed. R. Civ. P. 56), rev'd on other grounds sub nom. *Degen v. United States*, 517 U.S. 820 (1996); *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 950 (9th Cir. 1993) (same).

The evidence presented by defendants supports their motion for summary judgment. In contrast, Carney has presented no evidence that either his equal protection rights or his First Amendment rights were violated, or otherwise shown that a genuine dispute of

material fact exists.

### i. Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982). A plaintiff alleging denial of equal protection under 42 U.S.C. § 1983 based on race or other suspect classification must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent. *Monteiro v. Tempe Union High School Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998).

Proof of a discriminatory intent or purpose is required to show an equal protection violation based on race. *City of Cuyahoga Falls, Ohio v. Buckeye Community Hope Foundation*, 538 U.S. 188, 193-94 (2003). To avoid summary judgment, a plaintiff "must produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that the decision was racially motivated." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (quoting *Bingham v. City of Manhattan Beach*, 329 F.3d 723, 732 (9th Cir. 2003) (citations and alterations omitted)). "[C]onclusory statements of bias do not carry the nonmoving party's burden in opposition to a motion for summary judgment." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005).

Defendants have presented undisputed evidence that Carney was allowed to work many hours as a porter, and that his reduction in hours can be accounted for by prison lockdowns or Carney's loss of privileges. There is nothing in the undisputed record that points to invidious discrimination or anything resembling an equal protection violation.

Carney has not presented any proof of discriminatory intent or purpose, nor disputed defendants' evidence. He has not filed an opposition and his conclusory statements of bias in his complaint fail to carry his burden as the nonmoving party. *Thornton*, 425 F.3d at 1167. Defendants' summary judgment motion will be granted on the equal protection claims.

### ii. First Amendment

Carney similarly fails to show a genuine dispute of material fact regarding his First Amendment claim. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-568 (9th Cir. 2005). "We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) (citations omitted).

In the operative complaint, Carney alleges defendants refused to release him from his cell in retaliation for the "Institutional Liberty of being assigned[] a Second Watch Porter" and for "filing several Staff Complaints" against defendants. He further alleges that this "chilled" his exercising his First Amendment rights. (First Am. Compl., Dkt. No. 8 at 36.) These allegations are not sufficient to defeat a motion for summary judgment.

Carney has not shown a genuine dispute of material fact as to any *Rhodes* retaliation element. He has not provided any evidence that defendants took any action in retaliation for filing grievances. Carney's grievances against defendants were filed <u>after</u> the alleged impermissible confinement started in January 2015. Defendants cannot have initiated retaliation before there were grounds to retaliate.

Defendants also have presented undisputed evidence that Carney was allowed to work during the months in question. This evidence shows also that the only limitations imposed on his work schedule arose from prison lockdowns or for disciplinary reasons. Also, participating in a work assignment is not a protected First Amendment activity. Because Carney has not shown a genuine dispute that he was engaging in a protected First Amendment activity (whether by filing grievances or being appointed porter), he has not shown a genuine dispute that defendants acted in retaliation for exercising a First Amendment right.

Carney's allegation that defendants' action chilled his exercise of his First Amendment rights simply mimics the words of the statute and is conclusory. This is insufficient to create a genuine dispute of material fact concerning this *Rhodes* element.

Nor has Carney shown a genuine dispute whether there was a legitimate penological interest in confining him to his cell. Keeping a prisoner in his cell during lockdowns or for disciplinary reasons is a legitimate penological interest.

Defendants also presented undisputed evidence that Carney failed to administratively exhaust his claims against Hernandez. Prisoners must properly exhaust their administrative remedies properly before filing suit in federal court, as mandated by the Prison Litigation Reform Act (PLRA). *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The PLRA's exhaustion requirement is mandatory and a prisoner's failure to comply with this requirement cannot be excused by the courts. *Ross v. Blake*, 136 S. Ct. 1850, 1856-1858 (2016). The undisputed record shows that Carney's grievances against Hernandez were screened out and that subsequently Carney made no attempt to exhaust.

In sum, the movants' papers are sufficient to support the motion and do not on their face reveal a genuine issue of material fact. Defendants' motion for summary judgment is GRANTED in their favor on all claims.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED in favor of all defendants on all claims. (Dkt. No. 17.) The Clerk shall terminate all pending motions, enter judgment in favor defendants, and close the file.

**IT IS SO ORDERED.**

**Dated:** July 13, 2020



WILLIAM H. ORRICK
United States District Judge